# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAHEEM WILCOX, | |
| Plaintiff, | Civ. No. 18-8032 (KM) (CLW) |
| v. | |
| SGT. J. MARTINEZ, | OPINION |
| Defendant. | |

## I. INTRODUCTION

Plaintiff pro se, Raheem Wilcox, commenced this action by filing a civil-rights complaint under 42 U.S.C. § 1983, on April 16, 2018. (DE 1.) The action was initially administratively terminated, as the complaint included a defective application to proceed *in forma pauperis*. (DE 3, 4.) Mr. Wilcox subsequently submitted a proper *in forma pauperis* application, and the matter was reopened. (DE 5, 6, 8.) The Court now undertakes an initial screening of the complaint and a proposed amended complaint under 28 U.S.C. § 1915(e), 28 U.S.C. § 1915A, and 42 U.S.C. § 1997e.

## II. BACKGROUND

Mr. Wilcox is presently incarcerated at East Jersey State Prison, in Rahway, New Jersey, where he seems to have served as a barber for his wing of the prison. Mr. Wilcox explains that, in January 2018, defendant, Sgt. J. Martinez, accused him of failing to properly clean and maintain his barber tools, particularly clipper guards. (DE 1 ¶ 6.) Mr. Wilcox alleges that, the following day, he was informed that he was fired as the wing barber because he had failed to keep the clipper guards clean. (*Id.*) Mr. Wilcox contends that the poor condition of the clipper

guards was not his fault, but instead resulted from a failure by Sgt. Martinez to ensure provision of sufficient Barbicide disinfectant. (*Id.*) Mr. Wilcox asserts that Sgt. Martinez failed to provide a refill of Barbicide or provide gloves, and ultimately fired him, in retaliation for his having previously filed a grievance seeking a pay raise for wing barbers. (*Id.*) Wilcox states that he also filed a grievance concerning his firing and that, in response, non-party Major Jones told him to reapply for the position, though it had already been filled. (*Id.*) Mr. Wilcox also alleges that, because he was deprived of gloves to use while cleaning his barber tools, he developed a skin lesion on his hand. (*Id.*)

Mr. Wilcox asserts claims under 42 U.S.C. § 1983 and state law against Sgt. Martinez in both his individual and official capacities. (DE 1 ¶¶ 1–2.) He contends he was subjected to unsafe working conditions in violation of the Eighth Amendment and that his firing was retaliation in violation of the First Amendment. (DE 1 ¶ 2(b).) Mr. Wilcox further claims that he was subjected to discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id.*) Mr. Wilcox seeks a declaration that his constitutional rights were violated, an injunction against further retaliation, and compensatory and punitive damages. (*Id.* ¶ 7.)

Mr. Wilcox recently filed a proposed amended complaint. (DE 9.) The allegations against Sgt. Martinez appear to be substantively identical to those in the original pleading, but Mr. Wilcox additionally asserts a claim for supervisory liability against Assistant Superintendent Calvin Spires. (*Id.*) Mr. Wilcox alleges that Spires "learned of Martinez['s] illegal actions, and/or failed to correct defendant Martinez['s] misconduct that violated Wilcox['s] rights." (*Id.* ¶ 4c.)

### III. LEGAL STANDARDS

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the

prisoner (1) is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), (2) seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A, or (3) asserts a claim concerning prison conditions, *see* 42 U.S.C. § 1997e(c). The PLRA directs district courts to sua sponte dismiss claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *see also Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the Court's screening, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017). Nevertheless, "pro se

3

litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. That section provides,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV. ANALYSIS

I construe Mr. Wilcox's complaint as attempting to assert § 1983 claims against Sgt. Martinez in his individual and official capacities for retaliation in violation of the Free Speech Clause of the First Amendment, violations of the Cruel and Unusual Punishment Clause of the Eighth Amendment, and violations of the Equal Protection Clause of the Fourteenth Amendment. (*See* DE 1.) I construe Mr. Wilcox's amended complaint as attempting to add a claim for supervisory liability against Assistant Superintendent Spires. (*See* DE 9.) I address these claims in turn.

4

### 1. Claims Against Sgt. Martinez in His Official Capacity

Section 1983 permits actions against a "person." 42 U.S.C. § 1983. "[A] state is not a 'person' within the meaning of § 1983 . . . ." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989). As a claim against a state official in his or her official capacity is essentially a claim against the state, § 1983 claims are not permitted against state officials in their official capacities, except to the extent that such claims seek prospective injunctive relief. (*Id.* at 71 & n.10.) Accordingly, the claims for damages against Sgt. Martinez in his official capacity are dismissed with prejudice. *See Will*, 491 U.S. at 71 & n.10.

### 2. Retaliation

An incarcerated plaintiff pleads a claim for retaliation by alleging that "(1) he engaged in constitutionally protected conduct[,] (2) he suffered an adverse action[,] and (3) the constitutionally protected conduct was a substantial or motivating factor for the adverse action." *Brant v. Varano*, 717 F. App'x 146, 149 (3d Cir. 2017); *see also Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001). "'[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.'" *Allah v. Seiverling*, 229 F.3d 220, 224–25 (3d Cir. 2000) (alteration in original) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999)); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). It is well established that an inmate's filing of a grievance constitutes conduct protected by the First Amendment. *See Laurensau v. Romarowics*, 528 F. App'x 136, 139 (3d Cir. 2013); *Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) ("Filing a formal prison grievance clearly constitutes protected activity . . . ."); *see also Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016); *Mitchell*, 318 F.3d at 530.

5

An action is considered adverse if it would be "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 297 (3d Cir. 2016); *see also Watson*, 834 F.3d at 422 n.6; *Mitchell*, 318 F.3d at 530. Whether the action in question meets this standard "is an objective inquiry and ultimately a question of fact." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012); *see also Allah*, 229 F.3d at 225.

Once a plaintiff has shown evidence of protected conduct and an adverse action, the next requirement is a showing of a causal link between the two. *See Rauser*, 241 F.3d at 333. At that stage, the plaintiff first bears the burden to show that the protected conduct was a substantial or motivating factor underlying the adverse action, and the burden then shifts to the defendant to show that it would have taken the same action regardless of the plaintiff's protected conduct. *Id*; *see also Watson*, 834 F.3d at 831. Where a causal link cannot be shown with direct evidence, a plaintiff may try to satisfy the initial burden by demonstrating "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson*, 834 F.3d at 422.

Here, Mr. Wilcox has failed to adequately plead the third element of a retaliation claim—that his "constitutionally protected conduct was a substantial or motivating factor for the adverse action." *Brant*, 717 F. App'x at 149. His complaint includes no facts supporting a link between the grievance he filed seeking higher pay for wing barbers and Sgt. Martinez's alleged conduct. An examination of that grievance, which Mr. Wilcox has included as an exhibit to his complaint, shows that it makes no complaint regarding Sgt. Martinez or any other specific corrections officer. Instead, it states that it is a "respectful[] request that this administration consider raising the pay wage for wing barbers or that they be given and individual pay increase based on job performance and time on job, or make it equal to the pay wage for down under school barbers."

6

(DE 1-4, Ex. E.) Indeed, it appears from the complaint and its exhibits that this grievance was not badly received; a prison official first responded by stating that wing barbers would receive pay matching other barbers, though subsequently issued a correction reflecting a decision that other barbers would receive a decrease in pay to match that of wing barbers. (*Id.*) Mr. Wilcox alleges no facts demonstrating a causal link between the grievance and Sgt. Martinez's conduct or even suggesting that Sgt. Martinez knew of the grievance. There is no allegation of a prior pattern of antagonism. While it is possible that Mr. Wilcox's deprivation of Barbicide and gloves began around the time he claims he filed this grievance, it is not at all clear from the complaint whether this was the case. Accordingly, Mr. Wilcox has failed to plead a plausible claim for retaliation.

### 3. Cruel and Unusual Punishment

A claim under the Cruel and Unusual Punishment Clause includes both a subjective and an objective component: (1) that the defendant prison official acted with a culpable state of mind and (2) that the conduct in question was sufficiently harmful to become a constitutional violation. *See Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018). Claims under the Cruel and Unusual Punishment Clause may be divided into claims alleging excessive force and claims concerning the conditions of confinement. *See Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). The Eighth Amendment requires prison officials to "provide humane conditions of confinement," but it "'does not mandate comfortable prisons.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is a part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are

sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson*, 503 U.S. at 9 (internal quotation marks and citations omitted).

The deprivation of proper barbering supplies does not rise to the level of extremity required for a claim under the Cruel and Unusual Punishment Clause. The complaint includes no allegation suggesting that Mr. Wilcox was stripped of "the minimal civilized measure of life's necessities." *See Hudson*, 503 U.S. at 9. Nor does an alleged failure to provide sufficient Barbicide or gloves represent "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "Mere negligence claims do not constitute 'deliberate indifference.'" *Innis v. Wilson*, 334 F. App'x 454, 475 (3d Cir. 2009). Furthermore, Mr. Wilcox's firing from his job as wing barber does not demonstrate a constitutional injury, as "[p]risoners have no constitutional right to . . . jobs." *Chapman*, 452 U.S. at 348. Accordingly, Mr. Wilcox's claims under the Cruel and Unusual Punishment Clause will be dismissed.

### 4. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. The Supreme Court has described this as "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). An equal-protection claim thus requires a showing that (1) the plaintiff is a member of a protected class and (2) the plaintiff was treated differently from others similarly situated. *Oliveira v. Township of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002); *see also Johnson v. Fuentes*, 704 F. App'x 61, 65 (3d Cir. 2017); *Kazar v. Slippery Rock Univ.*, 679 F. App'x 156, 162 (3d Cir. 2017); *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005).

8

Persons are considered similarly situated when they are "alike in all relevant aspects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (internal quotation marks omitted).

A successful claim requires proof that the plaintiff was subjected to intentional or purposeful discrimination. *Hassan v. City of N.Y.*, 804 F.3d 277, 294 (3d Cir. 2015); *Shuman*, 422 F.3d at 151. A plaintiff must show discriminatory purpose by demonstrating that the defendant took the challenged action "at least partially because the action would benefit or burden an identifiable group." *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 548 (3d Cir. 2011) (citing *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009) (finding that stating discrimination claim requires pleading facts that show challenged policy was adopted "not for a neutral, investigative reason but for the purpose of discriminating").

While Mr. Wilcox nominally invokes the Equal Protection Clause, he has included no facts supporting such a claim. He has not alleged that he is a member of a protected class, or included any facts pertaining to treatment of similarly situated persons. (*See* DE 1.) Accordingly, any equal-protection claim is dismissed.

### 5. Supervisory Liability

Mr. Wilcox's proposed amended complaint adds a claim for supervisory liability against Assistant Superintendent Spires. (DE 9 ¶ 4c.) Generally, personal involvement by the defendant in the alleged constitutional violation is central to a § 1983 claim, and liability cannot rest on a theory of *respondeat superior*. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Supervisory liability generally requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a policy, practice, or custom that

caused the plaintiff constitutional harm. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Township*, 629 F.3d 121, 129 n.5 (3d Cir. 2010).

There are two potential theories of supervisory liability. *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Under the first theory, defendants may be sued as policy makers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.'" *Id.* (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. *See Baker v. Monroe Township*, 50 F.3d 1186, 1190–91 (3d Cir. 1995). Knowledge in a "failure to supervise" claim must consist of either "contemporaneous knowledge of the offending incident or knowledge of a prior patter of similar incidents."[1] *C.H. ex. rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).

Mr. Wilcox appears to be invoking the second version of supervisory liability, claiming that "Spires learned of Matrinez['s] actions, and/or failed to correct defendant Martinez['s] misconduct that violated Wilcox rights." (DE 9 ¶ 4c.) The amended complaint does not include sufficient factual allegations to support a "failure to supervise" claim, however, as Wilcox alleges neither that Assistant Superintendent Spires had contemporaneous knowledge of Sgt.

---

[1] The Third Circuit has expressed doubt as to whether this theory of supervisory liability survived the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which held that "purpose rather than knowledge is required to impose *Bivens* liability . . . for an official charged with violations arising from his or her superintendent responsibilities." *Id.* at 677; *see Jankowski v. Lellock*, 649 F. App'x 184, 187 (3d Cir. 2016.) The Court need not resolve the issue at this time.

Martinez's actions nor that Spires knew of a prior patter of similar conduct.[2] *See C.H.*, 226 F.3d at 202. Furthermore, as Mr. Wilcox has failed to adequately plead any violation of his constitutional rights by Sgt. Martinez, there is no underlying violation for which Assistant Superintendent Spires could bear supervisory liability. Therefore, this claim must be dismissed.

### 6. State-Law Claims

Mr. Wilcox has also requested that the Court exercise "supplemental jurisdiction over plaintiff's state claims." (DE 1 ¶ 1a; DE 9 ¶ 1a.) While federal courts do not generally have jurisdiction to hear claims under state law, they may exercise supplemental jurisdiction over such claims if they are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367; *see also De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003). Under 28 U.S.C. § 1367, the Court may decline to exercise supplemental jurisdiction after it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Furthermore, "'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)); *see also Sarpolis v. Tereshko*, 625 F. App'x 594, 599 (3d Cir. 2016).

Here, the Court has dismissed all claims over which it had original jurisdiction at the initial screening stage. The Court is presented with no affirmative reason of economy, convenience, or fairness to justify an exercise of supplemental jurisdiction. Therefore, to the

---

2    Indeed, Mr. Wilcox seems to allege that Assistant Superintendent Spires had knowledge of Sgt. Martinez's actions only because Mr. Wilcox sent him a letter of complaint after the fact. (DE 9 ¶ 4c.)

11

extent that Mr. Wilcox asserts any claims under state law,[3] the Court declines to exercise jurisdiction over them, and they will be dismissed.

## V. CONCLUSION

For the foregoing reasons, I find, upon screening under 28 U.S.C. § 1915(e), 28 U.S.C. § 1915A, and 42 U.S.C. § 1997e, that Mr. Wilcox's complaint and proposed amended complaint fail to state a claim upon which relief could be granted. Accordingly, the action is dismissed without prejudice. An appropriate order follows.

DATED: February 20, 2019

KEVIN MCNULTY
United States District Judge

---

[3] Neither the complaint nor the proposed amended complaint specifically invokes any particular state-law claim. (*See* DE 1; DE 9.)